IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Grace H., <br><br>                 *Plaintiff*, <br><br> v. <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br>                 *Defendant*. | Case No. 3:24-cv-50519 <br><br> Honorable Michael F. Iasparro |

**MEMORANDUM OPINION AND ORDER**

     Plaintiff Grace H. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for period of disability and disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

     Plaintiff filed an application for period of disability and disability insurance benefits alleging a disability onset date of September 27, 2021. R. 174. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on February 28, 2024, finding that Plaintiff is not disabled. R. 17-27. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> occasional climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasionally stooping, kneeling, crouching, crawling, or balancing; frequently handling and fingering with the bilateral upper extremities; avoid exposure to hazards including dangerous moving machinery and unprotected heights; no driving; can understand, remember, and carry out more than simple, but less than complex instructions; no group, tandem, or team work; and no problem solving tasks with the general public.

R. 22. The ALJ found that Plaintiff is unable to perform past relevant work but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 26.

     The Appeals Council denied Plaintiff's request for review on October 30, 2024, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 11.

1

**STANDARD OF REVIEW**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

**DISCUSSION**

Plaintiff challenges the Commissioner's decision on three grounds: (1) the ALJ did not provide substantial evidence for her evaluation and incorporation of the medical opinions in the record; (2) the ALJ failed to account for Plaintiff's migraine headaches in the RFC; and (3) the ALJ improperly evaluated Plaintiff's subjective symptoms. Dkt. 14. As explained in further detail below, the Court does not find that any of these alleged errors warrant remand.

1) Medical Opinion Evaluation

Plaintiff first argues that the ALJ erred in her evaluation of the medical opinions provided by Dr. Levitan and Dr. Cantu-Manley. Dkt. 14, at *4-9. Specifically, Plaintiff challenges the ALJ's incorporation of Dr. Levitan's opinion into the RFC and the sufficiency of support for the ALJ's evaluation of Dr. Cantu-Manley's opinion.

Dr. Levitan, the psychological consultative examiner, found Plaintiff "could perform simple and routine tasks" and "would have difficulty handling mild to moderate work pressure and stress" but "could communicate with co-workers and a supervisor" as well as "follow, understand, and retain most instructions." R. 1469. The ALJ found this opinion "mostly persuasive" and incorporated Dr. Levitan's conclusion that Plaintiff can "carry out more than simple, but less than complex instructions" into the RFC. R. 22, 25. Nonetheless, Plaintiff asserts that the ALJ erred by ignoring the portion of Dr. Levitan's opinion describing Plaintiff's difficulty handling mild to moderate work stress. Dkt. 14, at *5. However, the ALJ's conclusion that Dr. Levitan's opinion was mostly persuasive (a conclusion that Plaintiff does not challenge) did not make it necessary for the ALJ to address each limitation described therein. *See Pufahl v. Bisignano*, 142 F.4th 446, 458 n.18 (7th Cir. 2025) ("The ALJ had to 'consider the entire record,' but did not need 'to rely

entirely on a particular physician's opinion or choose between the opinions' . . . in coming to the ultimate RFC finding." (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007))).

Even so, Plaintiff has not shown that the RFC crafted by the ALJ is inadequate to account for Plaintiff's alleged difficulty handling work stress.[2] The state agency consultants at both the initial and reconsideration level considered Dr. Levitan's report and ultimately agreed that Plaintiff has difficulty handling stress. R. 86, 97. The state agency consultants then determined Plaintiff "will do best if she is able to work in a setting in which she can be largely independent." R. 86, 97. In line with those explanations, the ALJ limited Plaintiff to no group, tandem, or teamwork and no problem-solving tasks with the general public. R. 22; *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2023) (confirming that an ALJ may rely on narrative explanations in medical opinions). Thus, "the ALJ tied the record evidence to the limitations included in the RFC finding, tailoring Plaintiff's workplace setting to accommodate" her difficulties with handling work stress. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (citation modified).

Plaintiff also finds error in the ALJ's conclusion that the opinion provided by Dr. Cantu-Manley, Plaintiff's treating physician, was unpersuasive. This argument largely boils down to an invitation to reweigh the evidence which this Court cannot, and will not, do.

When examining medical opinions, ALJs are required to articulate the persuasiveness of each opinion by considering the following factors: supportability, consistency, the source's relationship with the claimant, the source's specialization, and other factors as appropriate. 20 C.F.R. § 404.1520c(c). While ALJs are not required to address all these factors, they must explain their consideration of the two most important factors – supportability and consistency. *Id.* § 404.1520c(b)(2). In short, ALJs are required to "explicitly explain why particular medical opinions are consistent [or inconsistent] with the record as a whole" and "consider the internal supportability of a physician's medical opinion." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023). The ALJ's analysis of medical opinions must be allowed "to stand so long as the ALJ minimally articulated her reasons—a very deferential standard that the Seventh Circuit has, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (citation modified).

Here, the ALJ found Dr. Cantu-Manley's opinion unpersuasive. Although Plaintiff challenges this finding, she provides a reasonable summary of the ALJ's explanation:

> In determining that Dr. Cantu-Manley's medical opinion was unpersuasive, the ALJ found that evidence of "benign diagnostic and clinical findings" were inconsistent with the opinion. The ALJ found that Dr. Cantu-Manley failed to support her opinion aside from identifying [Plaintiff's] subjective allegations and diagnoses. Finally, the ALJ found that the limitations that Dr. Cantu-Manley proposed were inconsistent with the conservative treatment that [Plaintiff] received for her impairments.

Dkt. 14, at *6 (quoting R. 25). The ALJ addressed consistency by pointing to benign findings and conservative treatment and addressed supportability by noting Dr. Cantu-Manley's reliance on Plaintiff's subjective complaints. This explanation is sufficient.

---

[2] Notably, a restriction to mild or moderate work stress would likely be difficult for a vocational expert to account for as "stress lies in the individual not in the job." *Clifford v. Apfel*, 227 F.3d 863, 868 n.2 (7th Cir. 2000).

3

Nonetheless, Plaintiff challenges this finding on several grounds. First, Plaintiff suggests that the ALJ ignored evidence that contradicts her conclusion – evidence "likely related to migraine activity" and evidence showing tenderness and weakness in the left leg, back, and hips. Dkt. 14, at *7. However, the ALJ did "minimally discuss" this evidence as necessary. *Thorlton*, 127 F.4th at 1082 (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)). By finding migraines to be a severe impairment, the ALJ recognized that Plaintiff's allegations of migraines were supported by objective evidence. *See* 20 C.F.R. § 404.1521 (explaining that medical impairments will only be found if they "can be shown by medically acceptable clinical and laboratory diagnostic techniques"). The ALJ also noted clinical findings of decreased strength in the left leg, tenderness in the spine, and impaired gait. R. 23. While Plaintiff points to some pieces of evidence the ALJ did not specifically discuss, this is not a case where the ALJ failed to "grapple with *lines of evidence* that are contrary to her conclusion." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (emphasis added); *see also Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021).

Plaintiff next argues that the ALJ "failed to identify specific diagnostic or clinical findings" that were inconsistent with Dr. Cantu-Manley's opinion. Dkt. 14, at *8-9. The ALJ specifically cited the consultative examiner's notes and records from Plaintiff's neurologist. R. 25. This alone satisfies "the most minimal of articulation requirements" to which the ALJ's analysis is subject. *Thorlton*, 127 F.4th at 1083. The ALJ was not, as Plaintiff suggests, required to specifically describe how that cited evidence was inconsistent with particular portions of Dr. Cantu-Manley's opinion. *See Pufahl*, 142 F.4th at 457 n.15 ("The ALJ did not need to comment on each line of Dr. Boffeli's and Ms. Kannenberg's opinion.").

Plaintiff also asserts that the ALJ's analysis of Dr. Cantu-Manley's opinion was predicated on the ALJ's own lay opinion and her misrepresentation of the opinion as relying "on nothing more than [Plaintiff's] subjective allegations." Dkt. 14, at *8-9. While the ALJ did point to Dr. Cantu-Manley's reliance on Plaintiff's subjective allegations, the ALJ did not say that subjective complaints were the only explanation provided. R. 25 ("Dr. Cantu-Manley provided *little* explanation or supporting evidence . . . aside from largely listing the claimant's diagnoses and subjective allegations." (emphasis added)). Even so, the ALJ's conclusion was a reasonable one as Dr. Cantu-Manley herself acknowledged her reliance on Plaintiff's reports, and such justification by the ALJ is appropriate. *See, e.g., Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations.").

The Court is also not persuaded by Plaintiff's argument that the ALJ played doctor by characterizing Plaintiff's treatment history as conservative and describing the medical record as containing "generally benign diagnostic and clinical findings." R. 25. The Court will not question the ALJ's finding that Plaintiff's treatment consisting of "pain medications and injections"[3] was conservative. R. 24; *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (explaining that an ALJ's classification of treatment involving "various pain medications, several injections, and one physical therapy session" as conservative will not be questioned). Nor will the Court second-guess the ALJ's determination that the record contained generally benign findings when the ALJ

---

[3] Plaintiff has not alleged that is an inaccurate summary of Plaintiff's treatment history or pointed to any other treatment that the ALJ should have considered. *See Morales*, 103 F.4th at 470 ("[Plaintiff] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record.").

4

made that finding in reliance on the medical expertise of the consultative examiner. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (explaining that an ALJ plays doctor when he "make[s] his own determination *without the benefit of an expert opinion*" (emphasis added)).

2) RFC Determination

Plaintiff goes on to argue that the ALJ erred in assessing Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ erred when she "did not determine the frequency with which [Plaintiff] suffered migraines, did not include functional restrictions that addressed the impact of [Plaintiff's] migraines, and did not address [Plaintiff's] alleged need to sleep to combat the effect of migraines." Dkt. 14, at *10.

Before the fourth step of the sequential evaluation process, an ALJ is tasked with crafting a claimant's RFC, "which is defined as 'the most physical and mental work the claimant can do on a sustained basis despite her limitations.'" *Swiecichowski v. Dudek*, 133 F.4th 751, 755 (7th Cir. 2025) (quoting *Mandrell*, 25 F.4th at 516). When conducting this RFC analysis, an ALJ will consider all the claimant's medically determinable impairments and related symptoms. *See* 20 C.F.R. § 404.1545(a). "Crucially, however, an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Here, the ALJ found that Plaintiff's migraines are a severe impairment. R. 19. Plaintiff argues that this finding made it necessary for the ALJ to determine the frequency with which Plaintiff experiences migraines. Dkt. 14, at *10. However, the ALJ considered Plaintiff's hearing testimony in which she described experiencing two to three migraines per week as well as Plaintiff's earlier reports to her neurologist that her migraines were down to once or twice a month. R. 22-23. "Nowhere does [Plaintiff] identify what evidence the ALJ overlooked or discounted, nor does she explain how the RFC determination should have been different" as is her burden. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (citation modified).

Plaintiff also asserts that the ALJ was required to find that Plaintiff's migraines resulted in some functional limitations. Dkt. 14, at *10. An ALJ's failure to find any functional limitations resulting from a severe impairment is certainly suspect, at the very least. *See Moore v. Colvin*, 743 F.3d 1118, 1125 (remanding in part because the ALJ "failed to identify any limitations that would arise from" migraines which the ALJ found to be severe). However, the ALJ here did account for Plaintiff's migraines in the RFC. The state agency consultant explained that the recommendation that Plaintiff avoid unprotected heights and dangerous machinery was done to account for Plaintiff's migraines and seizures. R. 95. The ALJ then relied on the state agency consultant's opinion to include the same limitations in the RFC. R. 22; *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). The ALJ also recognized that Plaintiff "does not drive due to migraines and seizures" and included a limitation of no driving accordingly. R. 21-22. This additional limitation shows that the ALJ did not "blindly defer[]" to the state agency consultants but gave "reasoned consideration" to Plaintiff's evidence. Dkt. 14, at *11; *Burmester*, 920 F.3d at 510; *see also Tutwiler v. Kijakiza*, 87 F.4th 853, 859-60 (7th Cir. 2023) ("The ALJ's careful consideration is shown by the fact that he departed from the [RFC] recommended by the state agency physicians who evaluated Tutwiler.").

The ALJ's failure to include a restriction to account for naps does not show error either. Plaintiff's alleged need for naps "is not supported by evidence other than her testimony, which the ALJ did not credit." *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019) (unpublished); *see also*

5

*Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (unpublished) ("There is no presumption of truthfulness for a claimant's subjective complaints."). In fact, the only opinion that includes a restriction that could be linked to this allegation is Dr. Cantu-Manley's opinion that Plaintiff would need to take hourly breaks and would be absent from work more than four days per month. R. 1241-42. However, as discussed above, the ALJ permissibly found this opinion unpersuasive. Thus, "[i]n order to conclude that Dr. [Cantu-Manley's] opinion provided a basis for a [nap-related] limitation, this [C]ourt would have to reweigh the evidence, contrary to well-settled case law on the standard of review for Social Security appeals." *Reynolds*, 25 F.4th at 474.

3) Subjective Symptom Analysis

Finally, Plaintiff challenges the ALJ's evaluation of the intensity, persistence, and limiting effects of Plaintiff's subjective complaints. Plaintiff argues that the ALJ "did not address the potential impact of [Plaintiff's] fatigue," drew negative inferences from Plaintiff's "perceived noncompliance," symptom improvement, and conservative treatment, and failed to consider Plaintiff's activities of daily living. Dkt. 14, at *11-15.

While Plaintiff does not frame her argument about the ALJ's handling of fatigue as a challenge to the ALJ's subjective symptom evaluation, the Court recognizes it as such. Fatigue is not a functional limitation but a symptom[4] and "symptoms [] are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional." *Titles II & XVI: Assessing RFC in Initial Claims*, SSR 96-8p (S.S.A. July 2, 1996); *see also Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *8 (N.D. Ill. Nov. 7, 2018) ("[O]ngoing symptomology does not equate to functional impairment."). Plaintiff's argument then boils down to an assignment of error for the ALJ's failure to discuss one of Plaintiff's alleged symptoms. The ALJ's failure to discuss each and every symptom alleged, "if wrong at all, was not so 'patently wrong' as to warrant reversal." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("[A]n ALJ's credibility findings need not specify which statements were not credible.").

Nonetheless, Plaintiff asserts that the ALJ's subjective symptom analysis as a whole is flawed. It is important to remember the role the ALJ and Plaintiff play in developing the record at the hearing level as well as Plaintiff's burden on appeal. An ALJ "has a duty to develop a full and fair record" but "the claimant has the principal duty to submit evidence relating to the disability claim." *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023) (citations omitted). Once the ALJ makes a decision based on that full and fair record, that decision as it relates to subjective symptoms is given "special deference and will be overturned only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citation modified). "It is not enough to nitpick the ALJ's order." *Morales*, 103 F.4th at 471. Plaintiff's arguments do exactly that.

It is true that an ALJ may not draw a negative inference from a claimant's treatment noncompliance without "first explor[ing] the claimant's reasons for the lack of medical care." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Here, the ALJ noted that Plaintiff's therapy notes described "compliance issues." R. 24. The ALJ did not stop her discussion there though as she went on to explain that Plaintiff "was honest in her role of her only minimally improving and

---

[4] This is clear from Plaintiff's own briefing as she argues that the ALJ "declined to include any *functional limitation* that reasonably addressed [Plaintiff's] fatigue." Dkt. 14, at *12 (emphasis added).

6

progressing in therapy" and the therapy notes attribute Plaintiff's lack of progress to "her fear of change and distracting herself with the needs of others." *Id.* This is precisely the type of reason the ALJ was required to explore before factoring Plaintiff's noncompliance into her evaluation. *See Deborah M.*, 994 F.3d at 790 ("[A]n ALJ must consider possible reasons for a failure to seek treatment" but is not required "to ask Plaintiff about her failure to seek treatment."). If Plaintiff believed those therapy records on which the ALJ relied were inaccurate or incomplete, it was her responsibility to more fully develop the record.

Plaintiff also faults the ALJ for relying on Plaintiff's conservative treatment in her subjective symptom analysis "without identifying what aggressive treatment is appropriate." Dkt. 14, at *13. However, Plaintiff "has not pointed to anything in the record to show that her doctors considered more invasive treatments, nor has she identified any specific reason that she did not seek more treatment." *Deborah M.*, 994 F.3d at 790. With nothing in the record to suggest that any more aggressive treatment was recommended, Plaintiff's assertion that the ALJ must identify other appropriate treatment would require the ALJ to impermissibly play doctor and simply hypothesize alternative treatments based on her own lay understanding of Plaintiff's symptoms.

As part of the subjective symptom analysis, the ALJ also pointed to Plaintiff's improvement with medication and lack of psychiatric hospitalization. R. 24. Plaintiff is correct that neither of these factors should be equated with a capacity to perform gainful employment. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014), *as amended* (Aug. 20, 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."); *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (explaining that "it doesn't follow" that a claimant who isn't institutionalized "is therefore capable of gainful employment"). However, the ALJ did not equate Plaintiff's improvement or lack of psychiatric hospitalization with her ability to work. Rather, the ALJ simply pointed to these pieces of evidence as some of the things she considered that led her to conclude that Plaintiff's symptoms were not as debilitating as alleged.

Plaintiff's final argument that the ALJ failed to explain how she considered Plaintiff's daily activities is similarly unpersuasive. Plaintiff concedes that the ALJ acknowledged Plaintiff's activities of daily living but argues that the ALJ needed to go further and explain how those activities were inconsistent with Plaintiff's subjective symptoms. Dkt. 14, at *14-15. The ALJ had no such obligation but was simply required to consider several factors (including Plaintiff's daily activities) and provide some explanation or support. *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 96-7p (S.S.A. July 2, 1996); *Pufahl*, 142 F.4th at 458 (explaining that an ALJ's subjective symptom analysis is only patently wrong if it "lacks *any* explanation or support" (citation modified)); *see also Bonilla-Castro v. Astrue*, No. 07-C-821, 2008 WL 4186691, at *9 (E.D. Wis. Sep. 9, 2008) (drawing a distinction between consideration and articulation of factors). The ALJ did exactly that and even credited Plaintiff's allegation that she was unable to drive. Again, the ALJ's inclusion of this driving restriction that was not provided by any of the medical sources shows "careful deliberation." *Padua v. Bisignano*, 145 F.4th 784, 792 (7th Cir. 2025).

Moreover, the Court "cannot reasonably expect an ALJ to 'intuit' a functional limitation from the whole record, nor can the Court look at the record anew to draw one out. Plaintiff bears the burden of showing that she has impairments that affect her ability to work." *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (unpublished) (citation modified). Plaintiff attacks several aspects of the ALJ's subjective symptom analysis but at no point does she hypothesize

7

"what kinds of work restrictions might address" her alleged symptoms. *Jozefyk*, 923 F.3d at 498. Thus, Plaintiff has failed to show that "the record compels a contrary result" and the ALJ's decision must stand. *Thorlton*, 127 F.4th at 1081 (citation modified).

## CONCLUSION

Plaintiff repeats that remanding this case for the ALJ to correct alleged errors in her analysis *may* lead to a different conclusion. But the possibility of a different finding is not enough. For the foregoing reasons, Plaintiff's motion for reversal and remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: December 11, 2025    By: _____
                                  Michael F. Iasparro
                                  United States Magistrate Judge